PAGNILLO v. MACK PAVING & CONSTRUCTION CO.

(Supreme Court, Appellate Division, Second Department. April 4, 1912.)

1. MASTER AND SERVANT (§ 276*)—BLASTING OPERATIONS—INJURY TO DRILLER —CAUSE—EVIDENCE—SUFFICIENCY.

   In an action for death of a driller, caused by dynamite exploding, evidence *held* to warrant a finding that the accident was caused by a drill penetrating another hole containing dynamite.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950– 952, 954, 959, 970, 976; Dec. Dig. § 276.*]

2. TRIAL (§ 140*)—PROVINCE OF JURY—CREDIBILITY OF WITNESSES.

   In a personal injury action, the credibility of the witnesses, judged by aid of physical facts, is for the jury.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. § 140.*]

Appeal from Trial Term, Westchester County.

Action by Maria A. Pagnillo, as administratrix of Giuseppe Pagnillo, deceased, against the Mack Paving & Construction Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

See, also, 142 App. Div. 491, 127 N. Y. Supp. 72.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

Paul Grout (Edward M. Grout and Charles B. La Voe, on the brief), for appellant.

Michael J. Tierney (Frederick P. Close, on the brief), for respondent.

THOMAS, J. [1, 2] On December 29, 1909, Pagnillo and Mascerello, defendant's servants, operating a drill, were killed by dynamite exploding through or near the hole they were making, which at the time was a few inches in the rock. The first question is: How did the drill cause the explosion, and where was the dynamite? The defendant indicates that the drill, driven vertically, came in contact with unexploded dynamite in the rock. But there is no evidence that explosive material had been so placed as to be met by a vertical drill. The plaintiff contends that the drill was not driven vertically, but at

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

an angle, so as to intersect another loaded hole.  So the main issue is:  Was the drill driven vertically, so that it could not reach or affect the other hole; or was it driven obliquely, so as to discharge the other, which the plaintiff's evidence shows was loaded, and which defendant's evidence shows was not loaded?

There were two Italians, Grasso and Castallucci, working near the place where the drillers were set to work by the foreman, who uncontradictedly pointed to the place for drilling, and both of them testified that the hole, for convenience called "No. 6," ran at an angle towards an existing hole, called "No. 5," estimated to have been 7 or 9 or 10 inches or a foot away, and, as Grasso stated, hole No. 6 had been run during from five to seven minutes to a distance variously estimated from 7 to 11 inches, whereupon there was an explosion in hole No. 5.  One Gelorimo, the regular driller, was away at the time, but on the same day examined and found the one hole running into the other, with a crack in the rock between the two, and both holes empty.  The coroner examined the holes the day after the accident, and found a deep straight hole, with part of the rock blown away, and another hole, 7 to 10 inches away on the surface and 7 to 10 inches deep, slanting into it, so that he could see that the two met, and that there was a slight opening from the one to the other 18 to 20 inches below the top of the straight hole, although the drill had not gone through, and that around both holes were black marks.  This evidence is opposed by that of the foreman that the new hole was straight, was 5 or 6 inches deep, about 22 inches from hole No. 5, that the explosion was on No. 6, that there was no mark on No. 5, and that the holes did not run together.  This statement is corroborated by Carey, who examined two days after the accident, by Hogan, the walking boss, by Adams, a civil engineer, and by Sherman, the general manager of defendant, who examined imperfectly from the top of bank.

It cannot be said that the finding that there was a connection between the holes is against the weight of the evidence.  But the defendant further urges that the fifth or deep straight hole was not loaded, that it was drilled the day before, after four holes had been discharged, that there were no explosions on December 29th before the accident, and that No. 5 was not loaded until some days afterwards, when it was blasted.  The plaintiff's evidence, including the testimony of the regular driller, is that on the previous day two holes were drilled, and one, No. 5, started, that on December 29th No. 5 was finished, the dynamite warmed in water, the three holes loaded, and an attempt made to discharge them, which was successful as to two, while one (No. 5) remained undischarged.  Here are witnesses arrayed against witnesses, who claim to have seen what happened, and those also are called who by their testimony state or indicate that there could have been no discharge, save at the time of the accident, as only one explosion was heard; that hole No. 5 was not completed on December 29th, as the pipes whereby the drill was run were frozen and required a long time to make ready; that no dynamite was given out; that there was no mark of explosion around hole No. 5, although the coroner states that it was black thereabouts.

The credibility of the witnesses, judged by aid of physical facts,. was for the jury, and, although a contrary conclusion would have been justified, the judgment is not affronted by the finding that hole No. 5 was loaded and discharged while the drill was operating. But how could the drill explode the dynamite? The evidence, as we have seen, justified the finding that the drill penetrated hole No. 5. If it did so, and came in contact with a charge therein, a competent cause for an explosion is not only found, but recognized by the defendant's experts, and the plaintiff's expert asserts, while defendant's experts deny,. that sufficient force of the drill towards hole No. 5 could discharge it. But it is also answered: How could the drill entering hole No. 5. so near its top come in contact with dynamite sunk to the bottom of a 'hole some four feet deep? The plaintiff answers the question by evidence that the earlier discharge of the two holes on that morning could lift the dynamite in hole No. 5 so far towards the top as to bring it within reach of the drill in hole No. 6, although 'defendants reject this. In this connection there should be considered the evidence that the length of hole No. 6 would not allow it to reach to hole No. 5, and that little disturbance of the rock about it was found. But in estimating distances witnesses are so fallible that a conclusion can. scarcely rest upon such judgments, and what disturbance of adjacent. material would follow an explosion that could make its way through two openings may not be so much a matter of theoretical statement as to rule the decision. When the fact is sufficiently established, as. it is by the finding in this case, that a drill penetrated a hole containing dynamite, and an explosion emptying the hole followed, the judgment that the drill influenced the powder to explode is so logical that it is not disturbed by theories that dispute the possibility or difficulties. that embarrass or antagonize the conclusion. If the superintendent, without inspection, permitted such operation, the jury were warranted. in finding that his omission was negligent.

The counsel for the plaintiff is criticised by appellant for his presentation of his case to the jury. There are some references in his. remarks that approach the limit of legal discussion; but, considering the disposition made of the matter by the trial court, they probably did not affect the jury to the defendant's disadvantage.

The judgment and order should be affirmed, with costs. All concur.